## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

                                                    Criminal No. 21-250 (JRT/TNL)

                            Plaintiff,

v.

                                          **MEMORANDUM OPINION AND ORDER**
JING CHEN (1), YING CHEN (2), LI YANG          **ADOPTING REPORT &**
(3), and XINHUA XIONG (4),                 **RECOMMENDATION AND ON ORDER**
                                            **DENYING MOTION TO SEVER**

                            Defendants.

---

Laura Provinzino and Ana H. Voss, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Lauren Campoli, **THE LAW OFFICE OF LAUREN CAMPOLI, PLLC,** 7300 France Avenue, Suite 405, Minneapolis, MN 55435, for Defendant Jing Chen;

Jean M. Brandl, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Defendant Ying Chen;

Glenn P. Bruder, **MITCHELL, BRUDER & JOHNSON,** 9531 West Seventy-Eighth Street, Suite 210, Eden Prairie, MN 55344, for Defendant Li Yang;

Piper Kenney Wold, **LAW OFFICE OF PIPER L. KENNEY**, 331 Second Avenue South, Suite 705, Minneapolis, MN 55401, for Defendant Xinhua Xiong.

Defendants are charged with several crimes including conspiracy to commit transportation to engage in prostitution, conspiracy to use a communication facility to promote prostitution, conspiracy to engage in money laundering, and engaging in monetary transactions in property derived from specified unlawful activity. Defendants filed myriad motions to dismiss the indictment, suppress evidence, and suppress

statements.  Magistrate Judge Tony N. Leung issued a Report and Recommendation ("R&R") recommending the Court deny all of Defendants' motions.  Defendant Jing Chen also filed a motion to sever, which the Magistrate Judge separately denied.  Defendants each object to the R&R and Jing Chen additionally requests review of the denial of her motion to sever.  After conducting a de novo review of the dispositive motions, the Court finds that the Magistrate Judge correctly denied each motion.  The Court will therefore overrule Defendants' objections, adopt the R&R, and deny Defendants' motions.  The Court will also affirm the Magistrate Judge's denial of Jing Chen's motion to sever because the Magistrate Judge's order was not clearly erroneous or contrary to law.

**BACKGROUND**

**I.    FACTS**

Defendants Jing Chen (a/k/a Amy Chen), Ying Chen (a/k/a Vicki Chen), Li Yang, and Xinhua Xiong (a/k/a Lucy) were indicted by a grand jury on November 23, 2021. (Indictment, Nov. 23, 2021, Docket No. 1.)  The Indictment brought charges for conspiracy to commit transportation to engage in prostitution in violation of 18 U.S.C. §§ 371, 2421 (all Defendants); conspiracy to use a communication facility to promote prostitution in violation of 18 U.S.C. §§ 371, 1952 (Jing Chen, Ying Chen, and Xinhua Xiong); conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956 (all Defendants); and two counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 (Jing Chen and Ying Chen).  (*See generally id.*)

The Indictment alleges that Defendants conspired for their organization to make money by arranging for women to travel to Minnesota to engage in commercial sex acts at various illicit massage businesses throughout the Twin Cities Metro Area.  (*Id.* at 2.) Defendants used computers and cell phones to post advertisements for commercial sex acts on Backpage.com.  (*Id.* at 5–6.)

## II.    PRESENT MOTIONS

On February 4, 2022, Defendant Jing Chen filed four dispositive motions: (1) a motion to suppress evidence due to nondisclosure, (2) a motion to dismiss the Indictment for failure to state an offense, (3) a motion to dismiss the first and third counts of her charge due to the statute of limitations, (4) and a motion to suppress evidence pursuant to an unlawful search and seizure of her residence and of two safe deposit boxes.  (Jing Chen Mot. Suppress Non-Disclosure, Docket No. 85; Jing Cheng Mot. Dismiss Indictment, Docket No. 89; Jing Chen Mot. Dismiss Counts, Docket No. 91; Jing Mot. Suppress Unlawful Search, Docket No. 92.)  Jing Chen separately moved for severance from her co-defendants.  (Jing Chen Mot. Sever, Feb. 4, 2022, Docket No. 83.)

On October 18, 2022, Defendant Li Yang filed three motions: (1) a motion to dismiss Count I of the Indictment; (2) a motion to suppress statements, admissions, and answers; and (3) a motion to suppress evidence obtained as a result of a search of her residence and resulting seizure.  (Yang Mot. Dismiss, Docket No. 178; Yang Mot. Suppress Statements, Docket No. 179; Yang Mot. Suppress Evid., Docket No. 181.)

On October 20, 2022, Defendant Ying Chen filed two motions with the Court: (1) a motion to suppress evidence obtained as a result of an unlawful search and seizure, and (2) a motion to suppress statements as a result of an unlawful interrogation.  (Ying Chen Mot. Suppress Evid., Docket No. 188; Ying Chen Mot. Suppress Statements, Docket No. 191.)

Defendant Xinhua Xiong has only filed a single motion with the Court: a pretrial motion to dismiss the Indictment.  (Xiong Mot. Dismiss, Jan. 4, 2022, Docket No. 56.)

## III.   REPORT AND RECOMMENDATION

The Magistrate Judge held a hearing on the motions on December 9, 2022. (Minute Entry, Dec. 9, 2022, Docket No. 220.)  Following the hearing and after considering the parties' supplemental briefing, the Magistrate Judge issued a lengthy R&R recommending the denial of Defendants' motions.  (*See generally* R. & R., Mar. 9, 2023, Docket No. 246.)  Defendants have each objected to the R&R.  (Yang. Obj. R. & R., Mar. 23, 2023, Docket No. 249; Ying Chen Obj. R. & R., Mar. 23, 2023, Docket No. 250; Jing Chen Obj. R. & R., Apr. 6, 2023, Docket No. 255; Xiong Obj. R. & R., Apr. 6, 2023, Docket No. 256.)

In a separate order, the Magistrate Judge also denied Jing Chen's motion to sever without prejudice, concluding that joinder was appropriate given the "significant amount of overlap and interplay between the charges," and because Jing Chen failed to demonstrate a likelihood of prejudice.  (Order at 6, 11, Mar. 9, 2023, Docket No. 245.) Jing Chen asks the Court to review the Magistrate Judge's order denying her motion to

sever, which the Court will construe as an appeal of the Magistrate Judge's order. (Jing

Chen Obj. R. & R. at 7.)

**DISCUSSION**

## I.    STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written

objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2);

*accord* D. Minn. LR 72.2(b). "The objections should specify the portions of the magistrate

judge's report and recommendation to which objections are made and provide a basis for

those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn.

Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected

to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections

which are not specific but merely repeat arguments presented to and considered by a

magistrate judge are not entitled to de novo review, but rather are reviewed for clear

error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

The standard of review applicable to an appeal of a magistrate judge's order on

non-dispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F.

Supp. 2d 1008, 1014 (D. Minn. 2007) (internal citation omitted). The Court will reverse

such an order only if it is clearly erroneous or contrary to law. *Id.*; 28 U.S.C. § 636(b)(1)(A);

Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). "A finding is clearly erroneous when 'although

there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*,

633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).  "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (internal quotation marks and citation omitted).

## II.   ANALYSIS

The Court will review most of Defendants' motions de novo.  *See* LR 72.1(a)(3)(A) (identifying motions to dismiss an indictment and motions to suppress evidence as dispositive pretrial motions in criminal cases).  However, motions to sever are considered non-dispositive, so the Court will review the Magistrate Judge's denial of Jing Chen's motion to sever for clear error.  *See United States v. Reed*, No. 18-15, 2018 WL 7504843, at *1 (D. Minn. Sept. 14, 2018) (identifying motions to sever as non-dispositive).

The Court will begin with a review of Defendants' motions to suppress before turning to the motions to dismiss the indictment and then to Jing Chen's motion to sever.

## A.  Motions to Suppress

### 1.    Motion to Suppress Evidence Due to Non-Disclosure

Jing Chen has moved to suppress evidence that was untimely made available to her defense counsel.  (*See* Jing Chen Mot. Suppress Non-Disclosure.)  Jing Chen asserts that the Unites States' failure to timely disclose two terabytes of data violated Federal Rule of Criminal Procedure 16 and two discovery orders.  (*Id.* at 1.)  The United States opposes Jing Chen's motion, pointing to the fact that it provided multiple rounds of discovery to Defendants, accommodated evidence review, and disclosed terabytes of

data—both before and after Jing Chen filed her motion.  (Gov't's Resp. Defs.' Pretrial

Mots. at 19, Feb. 7, 2023, Docket No. 243.)

Federal Rule of Criminal Procedure 16(d)(2) provides the Court with a menu of

options if a party fails to comply with discovery rules in criminal cases, including if the

United States fails to fulfill its obligation to disclose certain evidence under Rule 16(a).

The Court may order the party to permit the discovery or inspection, grant a continuance,

prohibit that party from introducing the undisclosed evidence, or enter any other order

that it deems just under the circumstances.  Fed. R. Crim. P. 16(d)(2).  The choice of

remedy depends on "whether the government acted in bad faith and the reason(s) for

[the] delay in production"; "whether there [was] any prejudice to the defendant"; and

"whether any lesser sanction [would have been] appropriate to secure future

[g]overnment compliance."  *United States v. Pherigo*, 327 F.3d 690, 694 (8th Cir. 2003).

District courts have broad discretion to sanction a party for failure to comply with

discovery orders.  *United States v. Davis*, 244 F.3d 666, 670 (8th Cir. 2001) (citing Fed. R.

Crim. P. 16(d)(2) (expressly providing for excluding evidence as a sanction)).

Assuming that the United States in fact violated the discovery orders, the Court is

nevertheless unconvinced that suppression is "the least severe sanction which will

adequately punish the government and secure future compliance" in this case.  *United*

*States v. DeCoteau*, 186 F.3d 1008, 1010 (8th Cir. 1999).  Further, Jing Chen has provided

no support for her blanket assertion that the United States' conduct has "greatly impaired

Ms. Chen's ability to prepare her defense, file her motions, and maintain her speedy trial rights." (Jing Chen Mot. Suppress Non-Disclosure at 4.) Jing Chen still has plenty of time to prepare her case in advance of trial. (*See also* Trial Notice, Apr. 26, 2023, Docket No. 261 (setting the trial date for July 5, 2023).) The risk of prejudice is therefore low. *See United States v. White Horse*, 316 F.3d 769, 773–74 (8th Cir. 2003). Accordingly, the Court will adopt the Magistrate Judge's recommendation and deny Jing Chen's motion to suppress evidence due to non-disclosure.

### 2. Motions to Suppress Evidence Pursuant to Unlawful Search and Seizure

Jing Chen, Ying Chen, and Li Yang have all moved to suppress evidence that they claim was seized during an unlawful search. The Fourth Amendment requires that a search warrant may only be issued if it is supported by probable cause. U.S. Const. amend. IV. In determining whether probable cause exists, the search warrant must demonstrate that given all the circumstances set forth in the affidavit, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This requires the issuing judge to look at the totality of the circumstances. *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998). When a search warrant is based solely on an affidavit, courts may only consider "that information which is found within the four corners of the affidavit" to determine the existence of probable cause. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citation omitted).

Defendants have filed motions to dismiss evidence seized during the search of residential properties and safety deposit boxes. The Court will address each individually.

### a.      Residential Search and Seizure

Jing Chen, Ying Chen, and Li Yang all moved to suppress evidence seized during searches of their residences. (Jing Chen Mot. Suppress Unlawful Search at 1; Ying Chen Mot. Suppress Evid. at 1; Yang Mot. Suppress Evid. at 1.) The "chief evil" deterred by the Fourth Amendment is the physical invasion of the home. *Payton v. New York*, 445 U.S. 573, 585 (1980). An individual's right to be "free from unreasonable governmental intrusion" into their home is vital to the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (citation omitted). To justify the search of a home there must be "sufficient nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citation omitted).

The warrants used to search Jing Chen, Ying Chen, and Li Yang's homes were all based on identical, detailed, 87-page affidavits from Department of Homeland Security ("DHS") Special Agent Charles Bautch ("SA Bautch"). (*See generally* Evid. Hearing, Gov't's Exs. 12, 13, 14, Dec. 9, 2022, Docket No. 220.) SA Bautch has twenty-five years of relevant experience with DHS, Homeland Security Investigations, and United States Immigration and Customs Enforcement. (Gov't's Ex. 12 at 19.) Over the course of his career, he has conducted and participated in numerous criminal investigations and participated in the execution of numerous search warrants. (*Id.*) He personally participated in an

investigation into an Asian massage parlor in Anoka County and Chinese buffet restaurants in the Twin Cities. (*Id.*)

In his affidavit, SA Bautch provided general background information on Asian massage parlors that may act as fronts for commercial sex operations throughout the United States ("AMPs"). (*Id.* at 20.) It was estimated that there were approximately 9,000 AMPs operating across the nation at the time the affidavit was written. (*Id.* at 20–21.) It is common for women to regularly transit between AMPs, and their travel is often arranged and paid for by the AMP. (*Id.* at 21.) AMPs may advertise their services online using websites like Backpage.com. (*Id.* at 23.) Additionally, AMPs operate on cash sales and tips, and many AMPs launder their proceeds to avoid reporting requirements and to evade law enforcement. (*Id.* at 22.) Accordingly, many AMP owners keep cash and other evidence at their residences and in safe deposit boxes. (*Id.* at 22, 23.)

Based on their investigation, law enforcement believed a group of individuals were operating a collective of AMPs in the Twin Cities metro area. (*Id.* at 25.) The affidavit identified many businesses, residences, motor vehicles, and bank safe deposit boxes to be searched. (*Id.* at 27–30.) It also identified and provided detail about each Defendant's involvement as operators and facilitators in the AMPs. (*Id.* at 33–35.)

### i. Jing Chen's Residence

SA Bautch discussed Jing Chen's residence in detail. (*Id.* at 75.) He noted how IP addresses subscribed to Jing Chen's address were used to post Backpage advertisements

for several massage parlors. (*Id.*) Moreover, the email address used to post on Backpage was also subscribed to her address. (*Id.*) Though the phone number listed for Lotus Spa used on Backpage advertisements belonged to Ying Chen, it was subscribed to Jing Chen's address. (*Id.*) Law enforcement officers also observed a vehicle registered at Jing Chen's address transporting AMP workers to/from AMPs and bringing supplies to AMPs. (*Id.* at 75–76.)

Defendant Jing Chen challenges the R&R's analysis of the search of her residence on two grounds. First, she argues that the warrant was stale because the affidavit did not provide a connection between her residence and any alleged crime during 2018. Second, she argues that the items seized during the search were not within the scope of the search warrant.

The Eighth Circuit has explained that "[a] warrant becomes stale if the information supporting [it] is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) (internal quotations omitted). However, "there is no bright-line test for determining when information is stale" so "time factors must be examined in the context of a specific case and the nature of the crime under investigation." *United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010) (citation omitted). The relevant factors include "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property

subject to the search." *United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997) (citation omitted).   Critically, a lapse in time is least important when the suspected underlying criminal activity is continuing in nature.  *United States v. Davis*, 867 F.3d 1021, 1028 (8th Cir. 2017).

The warrant to search Jing Chen's residence was issued on May 8, 2018.  (Gov't's Ex. 12 at 1.)  The search occurred two days later.  (*Id.* at 2.)  Moreover, SA Bautch's affidavit explains that Backpage purchases were made from a US Bank joint checking account belonging to Jing Chen as late as October 2017—just a few months before the warrant was issued.  (*Id.* at 36.)  The Court finds that the lapse of time here is not significant.

The circumstances of the case and the nature of the alleged conspiracy also suggest the warrant is not stale.  SA Bautch described an extensive conspiracy involving dozens of individuals and businesses across the Twin Cities.  There was a fair probability that, even if Jing Chen was not still involved in the alleged conspiracy, evidence of criminal activity may be found in the residence.  Accordingly, the warrant to search her residence was not stale.

Jing Chen also argues that the items seized from her residence were outside the scope of the search warrant.  "Law enforcement officials must have probable cause to believe that items seized in connection with a valid search warrant are associated with suspected criminal activity."  *Walden*, 156 F.3d at 873.  "Probable cause demands not that the officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious

man would warrant a belief 'that certain items may be contraband or stolen property or useful as evidence of a crime.'"  *United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997) (citation omitted).

Law enforcement seized "miscellaneous documents" from Jing Chen's residence. (*Id.* at 2.)  These documents included identifying documents like her U.S. Passport, medical insurance cards, medical and surgical records, ultrasound photographs, and a love letter to her husband.  (Jing Chen's Post-Hearing Mem. at 13, Jan. 17, 2023, Docket No. 237.)  As for her identifying documents, Jing Chen's scope argument is meritless because the warrant authorized seizure of "any passports, identity, visa, and/or immigration documents."  (Gov't's Ex. 12 at 5.)  As for her medical insurance cards, medical records, ultrasound photographs, and the love letter to her husband, it was reasonable for law enforcement to believe that these might contain evidence of a crime. Accordingly, the Court will deny Jing Chen's motion to suppress the items seized during the search of her residence.

### ii.  Ying Chen's Residence

Defendant Ying Chen challenges the Magistrate Judge's analysis of the search and seizure of her residence as well.  She argues that SA Bautch's affidavit failed to establish a sufficient nexus between sex trafficking or money laundering and her residence.  SA Bautch's affidavit indicated that Ying Chen's apartment address was listed on massage license applications as the residence for several AMP workers, and it is common for

women employed by AMPs to live together.  (Gov't's Ex. 13 at 21, 73–74.)  The IP addresses used to post Backpage advertisements for several massage parlors were subscribed to Ying Chen's address.  (*Id.* at 74.)  Law enforcement also observed Ying Chen's vehicle being used to travel from her apartment to pick up and transport AMP workers to AMPs and licensing bureaus, financial institutions, casinos, and the airport.  (*Id.*)

Judges "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant."  *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000).  Though SA Bautch's statements regarding Ying Chen's apartment do not mention sex trafficking or money laundering explicitly, SA Bautch explained in his affidavit that AMPs often launder their proceeds to evade law enforcement.  (*Id.* at 22.)  And the statements reasonably suggest Ying Chen was involved with AMP organizations.  Given the totality of the circumstances, the Court concludes there was sufficient nexus between Ying Chen's residence and probable criminal activity. The Court will therefore deny her motion to suppress the evidence seized from her residence.

### iii.  Li Yang's Residence

Defendant Li Yang similarly challenges the probable cause to search her residence. She argues that there was minimal information specific to her residence and there were no statements that suggested any illicit activity occurred at her home.

-14-

It is true that SA Bautch's affidavit discussed Yang's residence in less detail than the other Defendants' residences. The affidavit states that Yang's address was used on the massage license application for Jade Massage. (Gov't's Ex. 14 at 83.) Law enforcement observed Yang departing from the apartment and using a vehicle bearing California license plates to transport AMP workers to Jade Massage. (*Id.*) On a separate occasion, law enforcement observed Yang's husband leaving the apartment, acquiring a washer and dryer, and delivering them to a new AMP. (*Id.* at 83–84.)

Considering the totality of the circumstances, the Court finds that the warrant to search Yang's apartment was supported by probable cause. It is common for individuals involved in AMPs to keep cash and other evidence inside of their homes. (*Id.* at 22, 23.) And the statements in the affidavit suggest that Yang and her husband were involved in organizing and establishing AMPs. There was therefore a "fair probability that contraband or evidence" would be found at her residence. *See Gates*, 462 U.S. at 214. The Court will deny Yang's motion to exclude the evidence seized at her residence.

### iv.  *Leon* Good Faith Exception

Even if the Court had found that there was not probable cause to support the search of Defendants' residences, it would nevertheless deny their motions to suppress. Although the ordinary sanction for searches conducted in the absence of probable cause is suppression of the evidence recovered in the illegal search, this exclusionary rule is not applicable "when an officer acting with objective good faith has obtained a search

warrant from a judge or magistrate and acted within its scope." *United States v. Fiorito*, 640 F.3d 338, 345 (8ᵗʰ Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)). Among other circumstances, an officer does not rely on a warrant in good faith when the affidavit supporting the warrant contained reckless, knowing, or intentionally false statements that misled the issuing judge or was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quotation marks and citations omitted).  In determining whether the executing officer had an objectively reasonable belief that probable cause existed, the Court considers the totality of the circumstances, including information known to the officer but not presented to the issuing judge.  *United States v. Perry*, 531 F.3d 662, 665 (8ᵗʰ Cir. 2008).  Simply put, the "objectively ascertainable" inquiry is whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances.  *Herring v. United States*, 555 U.S. 135, 145 (2009).

Here, Defendants have not presented any evidence that suggests the officers who executed the warrants acted objectively unreasonably in relying on the warrants.  The affidavits were not so **facially** lacking in probable cause as to preclude reasonable reliance on them.  SA Bautch's affidavit was 87 pages and detailed each Defendant's residence and circumstances that suggest evidence of illicit activity would be found there.  There is no evidence that law enforcement acted unreasonably in relying on the resulting

warrants.  Accordingly, the Court will deny the Defendants' motions to suppress the evidence seized in their residences.

### b.    Safe Deposit Boxes

Jing Chen also moved to suppress evidence gathered from searches of Wells Fargo and U.S. Bank safe deposit boxes in Eau Claire, Wisconsin.  (Jing Chen Mot. Suppress Unlawful Search at 1.)  Jing Chen testified that the safe deposit boxes were in her mother's name only.  (Evid. Hr'g Mot. Tr. at 115:5–10, Jan. 4, 2023, Docket No. 232.)

But Jing Chen does not have standing to challenge that particular search because "Fourth Amendment rights are personal and may not be asserted vicariously."  *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994).  If a defendant does not show that they had a reasonable expectation of privacy in the places of objects searched, they do not have standing to claim that they were searched or seized illegally.  *Id.*  To establish a reasonable expectation of privacy, a claimant must show (1) that they had an actual (subjective) expectation of privacy, and (2) their subjective expectation of privacy is one that society recognizes as reasonable.  *Smith v. Maryland*, 442 U.S. 735, 740–41 (1979).  The defendant moving to suppress the evidence has the burden of establishing that they have a reasonable expectation of privacy that was violated by the search.  *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).  Courts questioning Fourth Amendment standing should consider factors such as:

> ownership; possession and/or control of the area searched or
> item seized; historical use of the property or item; ability to
> regulate access; the totality of the circumstances surrounding

-17-

the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*Gomez*, 16 F.3d at 257.

Here, the Court need not consider whether there was adequate probable cause for the warrants to search the two safe deposit boxes because Jing Chen has not satisfied her burden to show that she has Fourth Amendment standing. Jing Chen's motion to suppress is largely boilerplate, and she does not explain how she had a reasonable expectation of privacy in her mother's safe deposit boxes. (Jing Chen Mot. Suppress Unlawful Search at 1.) Accordingly, she lacks standing to challenge this evidence on Fourth Amendment grounds. The Court will therefore deny her motion to suppress the evidence seized from the two safe deposit boxes.

### 3.    Motions to Suppress Statements

Ying Chen and Li Yang both moved to suppress statements they made to law enforcement officers, arguing they made those statements during custodial interrogations before they were read their *Miranda* rights. (Yang Mot. Suppress Statements at 1; Ying Chen's Post-Hearing Mem. Supp. Mot. Suppress Statements at 1, Jan. 17, 2023, Docket No. 236.)

It is well established that incriminating statements may be excluded under the Fifth Amendment if they are the result of custodial interrogation without the proper *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The statement must be made

when the suspect is both (1) in custody and (2) under a form of interrogation.  *Id.* at 498–99.  An individual is "in custody" for *Miranda* purposes when their freedom "is restricted to a degree akin to formal arrest."  *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009).  "Interrogation" under *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

The Eighth Circuit considers six non-exclusive factors when determining whether an individual is in custody:

> 1) whether the suspect was informed that he or she was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*Elzahabi*, 557 F.3d at 883 (citation omitted).  The "most obvious and effective means of demonstrating that a suspect has not been taken into custody" is an express advisement that the suspect is not under arrest and that their participation in questioning is voluntary.  *United States v. Brave Heart*, 397 F.3d 1035, 1038 (8th Cir. 2005).

### a.    Ying Chen's Statements

Ying Chen moved to suppress statements she made while she was interviewed on May 10, 2018, by Bureau of Criminal Apprehension Special Agent Carrie Donarski ("SA

Donarski"). (Gov't's Ex. 17b at 1.)  The interview occurred inside SA Donarski's vehicle while police executed a search warrant for Ying Chen's apartment and car. (*Id.* at 2.)  The conversation lasted less than six minutes and the car doors were unlocked. (*Id.*)  SA Donarski informed Ying Chen that she was not under arrest, that she could leave, and that she did not have to talk. (*Id.* at 1.)

Ying Chen testified that she knew she was not under arrest, did not have to stay there, and did not have to talk to SA Donarski. (Mots. Hr's Tr. at 22:17–24, 26:22–27:11, Dec. 22, 2022, Docket No. 230.)  However, Ying Chen also testified that she felt pressured to answer SA Donarski's questions, in part because she comes from China where they "just cannot say no to police officers." (*Id.* at 15:17–23.)  Ying Chen was never handcuffed, no weapon was ever drawn on her, she was not threatened, and SA Donarski never raised her voice or made false promises. (*Id.* at 22:17–24:9.)  SA Donarski informed Ying Chen four times that she did not have to answer questions, and Ying Chen ultimately terminated the conversation by refusing to answer any more questions. (*Id.* at 27:9–15.)

The Court finds that this conversation between Ying Chin and SA Donarski does not qualify as a custodial interrogation.  Ying Chen was expressly advised that she was not under arrest.  She was expressly advised that she did not have to stay there.  And she was expressly advised that she did not have to talk to SA Donarski.  Though the large police presence at her apartment does weigh in favor of being considered in custody, the express statements made by SA Donarski greatly outweigh that fact.  Accordingly, Ying

Chen was not in custody when she was questioned on May 10, 2018, and her motion to suppress statements made to SA Donarski will be denied.

### b.    Li Yang's Statements

Defendant Li Yang has moved to suppress statements that she made to Anoka County Sheriff's Office Detective Thomas Strusinski on May 10, 2018.  (Gov't's Ex. 15b at 1.)  Like Ying Chen, Li Yang was interviewed in an officer's vehicle while her house was searched.   Detective Strusinski informed Yang that officers were executing search warrants at over twenty locations.  (*Id.* at 2.)  The conversation lasted approximately 45 minutes, during which Detective Strusinski informed Yang that she was not under arrest, she was not being detained, and that she did not need speak to him if she did not want to.  (*Id.* at 1–3, 21.)  Detective Strusinski interviewed Yang for a second time later that day.  (Gov't's Ex. 16b at 1.)  Detective Strusinski again informed Yang that she was not under arrest and that she did not have to answer his questions.  (*Id.*)

Like the conversation between Ying Chen and SA Donarski, the conversation between Li Yang and Detective Strusinski cannot be considered a custodial interrogation because Yang knew that she was not under arrest and was free to leave.  *See United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) ("The most obvious and effective means of demonstrating that a suspect has not been taken into custody is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will.") (cleaned up).  Because Yang was not in custody, her statements to Detective Strusinski are admissible and the Court will deny her motion to suppress them.

**B.  Motions to Dismiss Indictment**

Defendants also filed several motions to dismiss the Indictment.  Jing Chen filed a motion to dismiss the Indictment for failure to state an offense, as well as a motion to dismiss Count I and Count III under the statute of limitations.  Xinhua Xiong also moved to dismiss the Indictment, and Li Yang argues the Magistrate Judge failed to meaningfully consider her argument that Count I of the Indictment should be dismissed as unconstitutional in light of *Lawrence v. Texas*, 539 U.S. 558 (2003).

### 1.  Failure to State an Offense

Both Jing Chen and Xinhua Xiong urge the Court to dismiss the Indictment for failure to state an offense.  Jing Chen asserts that the Magistrate Judge failed to meaningfully consider each count of the Indictment, as well as the need to provide factual allegations of knowledge and intent as required for conspiracy.  (Jing Chen Obj. R. & R. at 4.)  Xinhua Xiong disagrees with the Magistrate Judge's conclusion that the Indictment adequately apprises her of the United States' accusations.  (Xiong Obj. R. & R. at 3.)

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  A defendant can move to dismiss an indictment if it fails to state an offense.  Fed. R. Crim. P. 12(b)(3)(v).  "An indictment is legally sufficient on its face if it contains all of the elements of the offense, fairly informs the defendant of the charges against which [they] must defend, and alleges sufficient information to allow a defendant" to exercise their Fifth Amendment double jeopardy rights.  *United States v. Carter*, 270 F.3d 731, 736 (8th Cir.

2001).  "An indictment will ordinally be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993).  An indictment for conspiracy requires that the government allege "a common intent, sufficient to identify the offense which the defendants conspired to commit." *Williamson v. United States*, 207 U.S. 425, 447 (1908).

The Indictment here complies with Federal Rule of Criminal Procedure 7(c)(1). Count I of the Indictment charges each Defendant with conspiracy to commit transportation to engage in prostitution in violation of 18 U.S.C. §§ 371, 2421. (Indictment at 1.)  It includes all the necessary elements of the crime.  To sustain a guilty verdict for conspiracy, the United States must prove (1) the existence of an agreement between two or more people to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) that the defendant knowingly joined and participated in the agreement.  *United States v. Whirlwind Soldier*, 499 F.3d 862, 869 (8th Cir. 2007).  The Indictment includes these three elements.  (Indictment at 1–2.)  In fact, the Indictment exceeds what is required—it outlines the purpose of the conspiracy, the manner and means of the conspiracy, and identifies several overt acts that the United States alleges Defendants undertook in furtherance of the conspiracy.  (*Id.* at 2–3.)  This is more than sufficient to put Defendants on notice of the charges against them and to allow them to exercise their double jeopardy rights.  Count II (conspiracy to use a communication facility

to promote prostitution in violation of 18 U.S.C. §§ 371, 1952) similarly satisfies Rule 7(c)(1). (*See id.* at 4–6.)

Count III, though not as rich in details as Counts I and II, also satisfies Rule 7(c)(1). Count III charges each Defendant with conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956. (*Id.* at 6.) The elements of a money laundering violation are (1) that the defendant conducted a financial transaction involving the proceeds of an unlawful activity; (2) that the defendant knew the proceeds involved in the transaction were the proceeds of an unlawful activity; and (3) that the defendant intended to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. *United States v. Pizano*, 421 F.3d 707, 725 (8th Cir. 2005). But to convict a defendant of **conspiracy** to launder money, the United States must prove that the defendant "knowingly joined a conspiracy to launder money and that one of the conspirators committed an overt act in furtherance of that conspiracy." *United States v. Evans*, 272 F.3d 1069, 1082 (8th Cir. 2001). Count III alleges all the necessary elements, fairly puts Defendants on notice of the charges against them, and gives them the ability to exercise their double jeopardy rights. It is therefore sufficient and will not be dismissed.

Counts IV and V charge Jing Chen and Ying Chen with engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. (Indictment at 8.) The Indictment identifies the date of two transactions, the

approximate amount of the transactions, and other details regarding where the transfer occurred.  (*Id.* at 9.)  This plainly satisfies Rule 7(c)(1).

Defendant Xinhua Xiong argues the Magistrate Judge incorrectly concluded that the Indictment adequately informed her of the charges against her because the Indictment does not lay out any essential facts to support its allegations against her specifically.  (Xiong Obj. R. & R. at 3.)  However, Count I of the Indictment lists "Overt Acts" in furtherance of the conspiracy, including that "On or about December 9, 2017, Jing Chen and Xinhua Xiong exchanged the flight itinerary for a worker named 'Anna' arriving from LaGuardia, New York, at the Minneapolis/St. Paul International Airport the following day." (Indictment at 3.)  This statement puts Xinhua Xiong on notice of the allegations against her.  The Court cannot conclude that the Indictment is so defective that it fails to charge the offense.  *See Hernandez*, 299 F.3d at 992.  The Court will therefore deny both Jing Chen and Xinhua Xiong's motions to dismiss the Indictment for failure to state an offense.

### 2.  Statute of Limitations

Jing Chen also separately moved to dismiss Count I and Count III of the Indictment. She argued to the Magistrate Judge that the United States failed to allege that she committed at least one overt act in furtherance of the conspiratorial agreement within the five-year statute of limitations.  (Jing Chen Mot. Dismiss Counts at 1.)  The Magistrate Judge recommended denial of this motion, and Jing Chen did not object to this recommendation.  (R. & R. at 42–47; *see generally* Jing Chen Obj. R. & R.)  The Court will therefore only briefly address it for the sake of completeness.

18 U.S.C. § 3282(a) provides a five-year statute of limitations for non-capital crimes. "In a conspiracy charge, the limitations period begins to run from the occurrence of the last overt act committed in furtherance of the conspiracy that is set forth in the indictment." *United States v. Mueller*, 661 F.3d 338, 347 (8th Cir. 2011) (quotation and citation omitted). The Indictment was filed on November 23, 2021, so to comply with the statute of limitations, the United States must allege an overt act in furtherance of the conspiracy prior to November 23, 2016. (*See generally* Indictment.) Count I of the Indictment alleges that Jing Chen and Xinhua Xiong exchanged the flight information for "Anna" on December 9, 2017. (*Id.* at 3.) This is an overt act in furtherance of the conspiracy that allegedly occurred within the statute of limitations. The Court will therefore deny Jing Chen's motion.

### 3. *Lawrence v. Texas*

Defendant Li Yang argues that Count I of the Indictment should be dismissed based on the reasoning set forth in *Lawrence v. Texas*, 539 U.S. 558 (2003). Count I of the Indictment charges Li Yang and her co-defendants with violation of 18 U.S.C. § 2421 (the "Mann Act"). The Mann Act provides, in relevant part, that individuals shall be fined and imprisoned if they knowingly transport an individual in interstate commerce "with the intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2421(a). Li Yang argues that the Mann Act should be rendered unconstitutional in light of the Supreme Court's

reasoning set forth in *Lawrence*. But Yang misinterprets *Lawrence* and fails to recognize the social context in which *Lawrence* was decided.

In *Lawrence*, the Supreme Court ruled that a Texas law that prohibited same-sex consensual sexual activity was unconstitutional. 539 U.S. at 578. The Supreme Court held that the Texas law violated the due process clause because two adults mutually consenting to private sexual conduct have a due process right to engage in their conduct without government interference. *Id.* The Court explained that there is a "realm of personal liberty which the government may not enter" and the Texas statute furthered "no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Id.* The Supreme Court emphasized that "homosexual conduct" had been condemned for centuries in part due to the majority's ethical and moral principles, but that the majority may not use the power of the state to enforce those views through operation of criminal law. *Id.* at 571. Yang asserts that the Mann Act, by criminalizing commercial sexual arrangements between consenting adults, is nothing more than an effort to impose a blanket moral code on society which is impermissible in light of *Lawrence*. (Yang Obj. R. & R. at 9.)

The Court appreciates Yang's creative argument. However, the Supreme Court explicitly noted that *Lawrence* "does not involve public conduct **or prostitution**." *Lawrence*, 539 U.S. at 578 (emphasis added). Not only has the Mann Act been upheld as

constitutional by the Supreme Court multiple times,[1] but Li Yang and her co-defendants are charged with conspiracy to commit transportation to engage in prostitution. (Indictment at 1.)  By its explicit terms, *Lawrence* does not apply here.  The Court declines to extend *Lawrence* to commercial sex and will accordingly deny Li Yang's motion to dismiss Count I of the Indictment.

## C.  Motion to Sever

Lastly, Jing Chen also asks the Court to review the Magistrate Judge's denial of her motion to sever.  The Eighth Circuit has held that defendants who are jointly indicted on similar evidence from the same or related events should normally be tried together, and a defendant must show "real prejudice" to warrant severance.  *United States v. Oakie*, 12 F.3d 1436, 1441 (8th Cir. 1993) (internal citation omitted).  "Real prejudice" is "something more than the mere fact that [they] would have had a better chance for acquittal had [they] been tried separately."  *Id.* (internal citation omitted).  Further, severance is "not required merely because evidence that is admissible only against some defendants may be damaging to others."  *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004) (citing *United States v. Blum*, 65 F.3d 1436, 1444 (8th Cir. 1995)).  "The risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions."  *Id.* (internal citation omitted).  Thus, to justify severance, the defendant must demonstrate that the

---

[1] *E.g., Bell v. United States*, 349 U.S. 81 (1955); *Caminetti v. United States*, 242 U.S. 470 (1917).  The Eighth Circuit more recently upheld the Mann Act as constitutional in *United States v. Garrett*, 521 F.2d 444, 446 (8th Cir. 1975).

jury will be unable to compartmentalize the evidence as it relates to the co-defendants. *United States v. Agofsky*, 20 F.3d 866, 871 (8th Cir. 1994).

Jing Chen argues that she has faced a great deal of prejudice from the agents involved in this matter and that SA Bautch continually conflates Asian-run businesses with illegal businesses facilitating criminal activity. (Jing Chen Obj. R. & R. at 7.) Accordingly, she argues that "the potential for racial prejudice and conflation of the evidence is very high." (Jing Chen Mot. Sever at 6.)

Though the Court is sympathetic to Jing Chen's concerns, the Court finds that joinder is permissible in this case. "Joinder is permitted subject to the strictures of Rule 8 of the Federal Rules of Criminal Procedure, which provide that different offenses may be joined when the offenses are similar in character, based on the same transaction, or are connected as part of a common scheme or plan. The rule is broadly construed in favor of joinder to promote judicial efficiency." *United States v. McCarther*, 596 F.3d 438, 441–42 (8th Cir. 2010). Each of the four Defendants are charged with conspiracy, and there is a significant amount of overlap between the charges. (*See generally* Indictment.) Moreover, Jing Chen has not made a particularized showing that the jury would not be "capable of properly compartmentalizing the evidence" against each Defendant. *See United States v. Garrett*, 961 F.2d 743, 746 (8th Cir. 1992) (internal citation omitted). The Magistrate Judge did not commit clear error or act contrary to law, so the Court will affirm the Magistrate Judge's order denying Jing Chen's motion to sever.

**CONCLUSION**

After considering Defendants' objections to the Magistrate Judge's R&R and conducting a de novo review of the dispositive motions, the Court finds that the Magistrate Judge correctly recommended the denial of the Defendants' motions.  The Court also finds that the Magistrate Judge did not clearly err in denying Defendant Jing Chen's motion to sever.  The Court will therefore overrule the Defendants' objections, adopt the R&R, affirm the Magistrate Judge's order denying the motion to sever, and deny Defendants' motions.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant Li Yang's Objection to the Report and Recommendation [Docket No. 249] is **OVERRULED**;

2.  Defendant Ying Chen's Objection to the Report and Recommendation [Docket No. 250] is **OVERRULED**;

3.  Defendant Jing Chen's Objection to the Report and Recommendation [Docket No. 255] is **OVERRULED**;

4.  Defendant Xinhua Xiong's Objection to the Report and Recommendation [Docket No. 256] is **OVERRULED**;

5. The Magistrate Judge's Report and Recommendation [Docket No. 246] is **ADOPTED**;

6. The Magistrate Judge's Order [Docket No. 245] is **AFFIRMED** as to its denial of Defendant Jing Chen's Motion to Sever [Docket No. 83];

7. Defendant Jing Chen's Motion to Suppress Evidence Due to Non-Disclosure [Docket No. 85] is **DENIED**;

8. Defendant Jing Chen's Motion to Dismiss Indictment for Failure to State an Offense [Docket No. 89] is **DENIED**;

9. Defendant Jing Chen's Motion to Dismiss First and Third Count of Defendant's Charge Due to State of Limits Expiration [Docket No. 91] is **DENIED**;

10. Defendant Jing Chen's Motion to Suppress Evidence Pursuant to Unlawful Search and Seizure [Docket No. 92] is **DENIED**;

11. Defendant Ying Chen's Motion to Suppress Evidence Obtained as a Result of Unlawful Search and Seizure [Docket No. 188] is **DENIED**;

12. Defendant Ying Chen's Motion to Suppress Statements as a Result of Unlawful Interrogation [Docket No. 191] is **DENIED**;

13. Defendant Li Yang's Motion to Dismiss Count 1 of the Indictment [Docket No. 178] is **DENIED**;

14. Defendant Li Yang's Motion to Suppress Statements, Admissions, and Answers [Docket No. 179] is **DENIED**;

15. Defendant Li Yang's Motion to Suppress Evidence Obtained as a Result of a Search and Seizure [Docket No. 181] is **DENIED**; and

16. Defendant Xinhua Xiong's Pretrial Motion for Dismissal of Indictment [Docket No. 56] is **DENIED**.


DATED:  May 23, 2023
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge